```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5                Plaintiff,

 6   -v-                                    Case No. 18-cr-20594

 7
     D-3:  ANDREW LEE ADCOCK,
 8
                  Defendant.
 9   _____/

10

11                          SENTENCING HEARING
12
             BEFORE THE HONORABLE LAURIE J. MICHELSON
13
          Flint, Michigan, Wednesday, July 31st, 2019.
14

15
     APPEARANCES:
16
     FOR THE PLAINTIFF:      BLAINE T. LONGSWORTH
17                           U.S. DEPARTMENT OF JUSTICE
                             600 South Church Street
18                           Flint, MI  48502

19
     FOR THE DEFENDANT:      JEROME SABBOTA
20                           Ribtwer & Sabbota, LLP
                             26862 Woodward Avenue
21                           Suite 200
                             Royal Oak, MI  48067
22

23

24   David B. Yarbrough, CSR, FCRR
     Official Court Reporter
25   (313) 234-2619
```

1                      TABLE OF CONTENTS

2                                                              PAGE

3     WITNESSES:

4

5

6

7

8

9

10

11

12

13

14

15                          EXHIBITS

16                   (Identified)           (Admitted)

17

18

19

20

21

22

23

24

25

1          Flint, Michigan.

2          Wednesday, July 31st, 2019.

3          At or about 3:30 p.m.

4                          --     ---     --

5          THE CLERK OF THE COURT:  All rise.  The United States

6    District Court for the Eastern District of Michigan is now in

7    session, the Honorable Laurie J. Michelson presiding.  Please

8    be seated.

9          The Court calls case number 18-20594, United States

10   of America versus Andrew Adcock.  Counsel, please put your

11   appearances on the record.

12         MR. LONGSWORTH:  Good afternoon, your Honor.  Blaine

13   Longsworth appearing on behalf of the United States.

14         MR. SABBOTA:  Good afternoon.  Jerome Sabbota

15   appearing with Mr. Adcock.

16         THE COURT:  All right.  Good afternoon, Counsel.

17   Good afternoon, Mr. Adcock.  You may be seated.  Mr. Adcock has

18   been charged in a multi-defendant, multi-count indictment with

19   gun and drug charges.  On March 27, 2019 I accepted his guilty

20   plea to count six, possession of a firearm by a prohibited

21   person and count 12, carrying a firearm during and in relation

22   to a drug trafficking crime in violation of 18 United States

23   Code, Section 924(c).  The plea deal also involved relevant

24   conduct involving the sale of another firearm and drugs.

25         I took the Rule 11 Plea Agreement under advisement

1    and referred the matter to the probation department for the

2    preparation of a presentence report.  That report has been

3    prepared and we are here this afternoon for the sentencing and

4    so Mr. Sabbota, I first just want to make sure that you and

5    Mr. Adcock have received the presentence report and that you

6    had an opportunity to review it and to discuss it?

7            MR. SABBOTA:  Yes, we have.

8            THE COURT:  And Mr. Adcock, did you have an

9    opportunity to ask your lawyer any and all questions that you

10   may have had about the presentence report?

11           THE DEFENDANT:  Yes, ma'am, I did.

12           THE COURT:  Was he able to answer those questions for

13   you?

14           THE DEFENDANT:  Yes, ma'am, he was.

15           THE COURT:  Before we continue with the sentencing

16   this afternoon, do you feel that you need or want any

17   additional time to discuss any aspect of the presentence report

18   with your lawyer?

19           THE DEFENDANT:  No, ma'am, I do not.

20           THE COURT:  And I did not receive any objections from

21   the parties so Mr. Sabbota, does the defendant have any

22   disagreements with, corrections or additions to the presentence

23   report?

24           MR. SABBOTA:  No, he does not.

25           THE COURT:  And Mr. Longsworth, did the government

1    have an opportunity to review the presentence report?

2              MR. LONGSWORTH:  Yes, your Honor.

3              THE COURT:  And does the government have any

4    disagreements with, corrections or additions to the content of

5    the report?

6              MR. LONGSWORTH:  None, your Honor.

7              THE COURT:  All right, thank you.  Because this is a

8    little bit of a complicated calculation of the guidelines

9    range, I'm going do that first before I hear from the parties

10   and I'll advise the parties that I also have received the

11   presentence report.  I've also received and carefully reviewed

12   the parties' sentencing memorandums, the defendant's memorandum

13   included a psychological report from Dr. Segrue, S-e-g-r-u-e.

14   I also received the letter from Mr. Adcock's father and a

15   letter from his brother.  I've not received any other materials

16   regarding the sentencing and so except as otherwise stated I am

17   going to accept the presentence report as my findings of fact.

18             In terms of calculating the sentencing guidelines

19   range for count six, the base offense level for a prohibited

20   person possessing a gun who has a prior conviction for drug

21   offense is 20.  There's a two-level enhancement because the

22   offense involved three firearms, the two firearms that

23   Mr. Adcock sold on June 19th, 2015 and the guns sold on June

24   26th, 2015.  Another two-level enhancement because the 40

25   caliber Smith and Wesson was stolen and a four-level

1    enhancement because the offense involved trafficking of two

2    firearms for an adjustment offense level of 28.

3            Mr. Adcock is entitled to a three-level reduction for

4    his timely acceptance of responsibility for an offense level of

5    25.  His prior convictions and the fact that he committed the

6    present offense while under a criminal justice sentence for

7    another drug offense puts him in a criminal history category

8    six.  A base offense level of 25 and criminal history category

9    of six results in an advisory guidelines prison range of 110 to

10   137 months.  The statutory maximum though for that offense is

11   120 months so the range becomes 110 to 120 months.

12           Under Section 2K2.4 of the sentencing guidelines, the

13   guideline sentence for the 924(c) conviction is the term of

14   imprisonment required by the statute which in this case is a

15   mandatory minimum of five years, up to life.  So adding in the

16   60 months, the five years from count 12, the presentence report

17   calculates an advisory guideline range of 170 to 180 months.

18   That's the 110 to 120 on count six plus the automatic 60 on

19   count 12 gets to you 170 to 180.  That's higher than the range

20   calculated in the parties' Rule 11 Plea Agreement of 152 to 175

21   months.  The difference is the enhancement for the defendant

22   possessing three firearms.  I agree with that enhancement,

23   there's been no objection to that enhancement so I am accepting

24   the calculation in the presentence report of 170 to 180 months.

25   Is there any objection to that calculation, Mr. Longsworth?

1          MR. LONGSWORTH:  No, your Honor.

2          THE COURT:  And Mr. Sabbota?

3          MR. SABBOTA:  No.

4          THE COURT:  The parties' Rule 11 Plea Agreement

5    provides that if I accept the agreement, I may not sentence

6    Mr. Adcock to more than the bottom of the guideline range set

7    forth in the agreement which would be 152 months and because

8    that would require a downward variance from the calculated

9    guidelines range, I do want to hear from the parties first

10   before I decide whether to accept the Rule 11 Plea Agreement.

11   So at this time, Mr. Longsworth, do you wish to make any

12   remarks on behalf of the government?

13         MR. LONGSWORTH:  I do, your Honor, and to begin with,

14   the parties do have a stipulation that we would like to put on

15   the record at this time.

16         THE COURT:  All right.

17         MR. LONGSWORTH:  Since the defendant entered his

18   guilty plea, there's been a change in the law.  The Supreme

19   Court handed down a decision that added an element to the

20   offense of felon in possession of a firearm and with respect to

21   count six in this case, your Honor, the parties agree and

22   stipulate that in June of 2015 as the indictment alleges, the

23   defendant had, knew that he had been previously convicted in

24   court of a crime punishable by imprisonment for a term

25   exceeding one year.

1          THE COURT:  All right.  Mr. Sabbota?

2          MR. SABBOTA:  Yes.  I've spoken with Mr. Adcock about

3    that and he knows that he was not eligible to possess a

4    firearm.  He has no objection with the stipulation.

5          THE DEFENDANT:  I don't.

6          THE COURT:  And Mr. Adcock, you had an opportunity to

7    discuss this stipulation with your lawyer before you entered

8    into it?

9          THE DEFENDANT:  Yes, ma'am, I did.

10         THE COURT:  And you are agreeing that at the time you

11   possessed the firearm, you knew that you had previously been

12   convicted of a crime for which you were subject to punishment

13   of more than a year?

14         THE DEFENDANT:  Yes, ma'am, I knew that.

15         THE COURT:  All right, very good.  I will accept the

16   stipulation.

17         MR. LONGSWORTH:  Thank you, your Honor.

18         THE COURT:  All right, thank you.

19         MR. LONGSWORTH:  In terms the sentencing in this

20   case, your Honor, we'd also ask that the Court include

21   forfeiture the firearms and ammunition.  I believe a

22   preliminary order of forfeiture was entered on June, umm, or

23   July 15th 2019 and that's docket number 68.

24         THE COURT:  And Mr. Sabbota, is there any objection

25   to that forfeiture language that was docketed?

1          MR. SABBOTA:  No, there's not.

2          THE COURT:  All right.  Then we will put that

3    forfeiture language, we'll include that in the final judgment.

4          MR. LONGSWORTH:  And your Honor, with respect to the

5    3553 (a) sentencing factors, the government relies on the

6    sentencing memorandum that we have provided to the Court that

7    sets forth the nature the defendant's crimes, his

8    characteristics and his criminal history.

9          There is something, though, that occurred recently

10   that I think is relevant to the sentencing and it was not

11   included in the government's sentencing memorandum and one of

12   the factors that the Court is supposed to consider is the need

13   to avoid unwarranted sentencing disparities among defendants

14   with similar records who have been found guilty of similar

15   conduct and I would direct the Court to a case that your Honor

16   sentenced a defendant to last week.  It's case number

17   18-cr-20598.  The defendant's name was Robert Hensley.  It was

18   a case that arose out of the very same investigation and that,

19   Mr. Hensley was convicted of two similar counts, one of 924(c)

20   and a second of felon in possession of a firearm and in the

21   same vain, Mr. Hensley committed his offenses in 2015.  After

22   he committed his offenses, he committed a completely unrelated

23   offense in 2016, was convicted of that unrelated offense and

24   began serving a prison sentence for which he is currently

25   serving.  In 2018, the government brought charges against

1    Mr. Hensley for the conduct that occurred in 2015.  That very

2    same scenario has occurred in this case.

3            The investigation occurred in 2015; the counts that

4    the defendant, Mr. Adcock, is now pleading guilty to occurred

5    in June and July of 2015.  Since that moment, he committed

6    another offense and he was charged in state court for conduct

7    that occurred in December of 2015 and he's been serving a

8    firearm sentence of at least five years in state prison as a

9    result of the conduct that occurred in December of 2015.

10   Charges were not brought by the government in this case until

11   2018 and he recently pled guilty in March of this year and so I

12   bring that case to the Court's attention because the guidelines

13   were the same for the 924(c) count which of course are 60

14   months, but with respect to the felon in possession count, the

15   guidelines for Mr. Hensley were 70 to 87 months and the Court

16   sentenced Mr. Hensley to 16 months on that count for a total

17   sentence of 76 months and I think that's simply a case that the

18   Court could consider in assessing this issue of whether to

19   avoid unwanted sentencing disparities and with that, I have

20   nothing further to add in addition to what's in the

21   government's sentencing memorandum.

22            THE COURT:  All right, thank you Mr. Longsworth and

23   Mr. Sabbota, I'll ask you and Mr. Adcock if you'd come to the

24   podium for me, please?  And Mr. Sabbota, I'll start with you

25   and see if you wish to make any remarks on Mr. Adcock's behalf?

1        MR. SABBOTA:  I do, your Honor.  I agree with what

2    the government has just said.  Their sentencing recommendation

3    is I believe 152 months in their sentencing memo.  If you look

4    at the scenario that occurred is Mr. Adcock committed these

5    offenses prior to committing the offense which 'caused him to

6    go to the Michigan State Department of Corrections so had he

7    been arrested and for whatever reason he wasn't, perhaps he

8    wouldn't be in this situation that he's in now.

9        So he commits this other offense which is again a gun

10   offense.  He's given a five-year mandatory minimum.  That means

11   that that's a consecutive sentence to whatever sentence is

12   imposed, so that's five years.  There's nothing anybody can do

13   about that.  There's also a violation of parole because he was

14   on parole at the time from 2012 for a drug offense so the

15   parole is still lingering there.  So his out date totally is I

16   think 2038.

17       Now this Court's got no control over that.  Nobody

18   has any control over that and that's really the red herring

19   here because we don't really know what the Department of

20   Corrections is going do.  Obviously the Michigan Department of

21   Corrections has to keep him for five years and then we don't

22   know what's going to happen when he goes before the parole

23   board.  I believe the parole board will give him what they call

24   a flop where they're not going to release him right away.

25   They're going to give him a term of years which will be in

1    addition to the 60 months that he's serving in the Michigan

2    Department of Corrections.  Now those sentences will occur --

3    no matter what you impose, those sentences are going to incur

4    and are consecutive to the gun charge, the use of the firearm

5    in this case because the statute requires that to be a 60 month

6    sentence.  The felon in possession the Court I believe can

7    sentence him concurrently to adjust that disparity.

8            I had -- my sentencing memorandum really outlines who

9    Mr. Adcock is.  He's had a terrible upbringing.  His family is

10   here in support.  I provided a letter to the Court that I

11   received today from the father.  He has no relationship with

12   his father.  He's kind of surprised his father's here.

13           As to his mother, Dr. Segrue and the probation

14   department have verified her behavior as well as the father's

15   behavior which created him really.  I mean, 10 years old he's

16   on the street.  He's in foster care.  He goes to his

17   grandmother's house.  He stops going to school at 12 or 13.

18   For whatever reason nobody forces him to go to school.  He's a

19   victim of what you'd call educational neglect and then when

20   he's in here being taken care of by his grandmother, he runs

21   the streets and he takes care of himself so he learns to behave

22   illegally.  He had no support.  He had no father image.  He had

23   no mother image.  He just took care of himself and eventually

24   he goes to prison and as he described he goes to prison and

25   when he they release him the first time he's in the prison in

1    the state system which is a lot different than the federal

2    system.  The state system just releases him, he goes home.

3    It's not like coming out of the state sys -- the federal system

4    when you're on supervised release and they have all those

5    vocational programs available to him which is something he

6    wants to participate in.

7            So when you talk about a variance, I believe the

8    Court has to take into consideration number one, he should have

9    been, really been arrested in July in 2015 which would have

10   probably started him on a better course of rehabilitation.

11   It's not his fault he wasn't arrested.  For whatever reason the

12   government chose not to do so.  What happens is he then picks

13   up another case which is a five-year mandatory minimum and now

14   he stands before this Court.

15           This Court in fashioning a sentence to comply with 18

16   U.S.C., 3553(a) factors has to formulate a sentence which is

17   sufficient, but necessary to comply with those purposes.  I

18   think it's going to be hard and the only reason I say that is

19   because the unknown is the state sentence.  We know of the five

20   years, but we don't know what the parole department's going to

21   do or the Michigan Department of Corrections and so I'm asking

22   that the Court, number one vary it.  I ask the Court for a

23   12-year sentence totally, but the 60 months he's got to do

24   consecutive, we all know that, no matter what they do in the

25   state sentence.  I believe the Court can adjust the 60 month

1    sentence I'm asking for the felon in possession case so it

2    adequately covers the guidelines and adequately reflects the

3    purposes of 18 U.S.C., 3553(a) because of right now we're

4    talking he's going to do a minimum, he's got 23 months on the

5    state sentence and five years on the use of a firearm so that's

6    about 73 months, 83 months right now before the felon in

7    possession sentence.

8            THE COURT:  You mean on count 12, the automatic five

9    year on count 12 and then I think there's two years left on

10   the, 2021 is the release --

11           MR. SABBOTA:  Right, that's what I'm saying.  He gets

12   six years on the use of a firearm during the -- the use of the

13   firearm here in the drug trafficking --

14           THE COURT:  Or five.  60 months, five years.

15           MR. SABBOTA:  Five years, mandatory five.  I'm bad

16   with the math when you do the 60 months.  That's five years and

17   then he's got 23 months left on his state sentence so that's 83

18   months right now.  I think the Court has and should take that

19   into consideration when you determine what's sufficient.  So

20   he's got 83 months and then he's got the felon in possession

21   charge and what we don't know what the parole department's

22   going to do in the state Department of Corrections.  So let's

23   say they give him another five months -- five years rather

24   because of the violation.  Because his parole is to 20 -- the

25   parole can hold him until 2038 and that's the unknown and I

1    think that's where the real quandary is because there's no way

2    for anybody to predict what they're going to do.  Thank you.

3             THE COURT:  All right, thank you.  I appreciate it

4    and Mr. Adcock, we talked at your change of plea hearing that

5    you would have the opportunity if you wished to address the

6    Court at sentencing before I imposed the sentence.  Is there

7    anything that you would like to say at this time?

8             THE DEFENDANT:  Yes, ma'am, there is.

9             MR. SABBOTA:  He wants to read something, but he's

10   very nervous.

11            THE COURT:  Absolutely and take your time, whatever

12   you'd like to do or say.

13            THE DEFENDANT:  I'd like to say your Honor, I'm going

14   to be honest and I'm going to express myself to the best of my

15   ability.  I understand the nature of my offenses and I know

16   what I was doing was --

17            THE COURT:  And if you could just and I know it's

18   hard and I know this is difficult, if you could try to go a

19   little slower because we do need to have the court reporter

20   take this down.

21            THE DEFENDANT:  Yeah.  I said your Honor, I'm going

22   to be honest and I'm going to express myself to the best of my

23   ability.  I understand the nature my offenses and I know what I

24   was doing was wrong.  I just want to say that the person

25   standing before you today is not the same person that committed

1    these offenses.  I was 20 years old when I made the decisions

2    that landed me in prison.  I had no direction in life and made

3    choices without any regard to myself or anyone around me.

4         Today I stand before you as an individual who's made

5    a lot mistakes, but has been humbled through my transgressions.

6    Next month I'll be 25 and in December I'll be starting my

7    seventh year in prison.  I've spent my whole adult life in

8    prison.  I've seen the worst the world has to offer and I know

9    this ain't the life I want for myself.  Fortunately I'm blessed

10   to have a strong and supportive family who has encouraged me

11   and watched me grow from a boy that created so many problems in

12   his life to the man I am today who is waiting for a chance to

13   be all I can be and eager to live a life I can be proud of.

14        I've taken every opportunity that's been available to

15   me by participating in the many programs I completed in the

16   MDOC.  I will not stop striving to be a better me for family

17   and loved ones.  I'm engaged to be married to beautiful fiance

18   that supported me through all the chaos and continues to be a

19   person of influence in my life.  This is the third time my

20   mother has watched me be sentence under our country's mandatory

21   minimum laws.  There will not be another.

22        I have two children who will likely be grown before I

23   make it back home.  The hardest part of this sentence is

24   knowing that I will never get the chance to correct some wrongs

25   I've done.  For the past three and-a-half years I've been

1  promising my son that I'll be there for his eighth birthday.  I

2  don't know how I'm going to be able to explain to him that I'm

3  not going to be able to make it.  I've made so many promises

4  that I'm unable to keep that it makes me feel like I'm less of

5  a man.

6          I've been planning a life outside these concrete

7  walls since the day I stepped through the gate so you can

8  imagine the heartache and stress I'm going through being

9  prosecuted three and-a-half years into a sentence and then

10  having the sentences stacked on top of each other, to finish

11  one only to start another.  I know it's choices I've made, but

12  I can't help feel like all my ambitions and hopes were snatched

13  away.  I feel like how far I came and everything I've been

14  working towards was for nothing.  I know this is a negative way

15  to look at things, but I can't help the way I feel.  I've been

16  in prison for 44 months and I have another 23 month before I

17  can start the sentence imposed today.

18          I stand before you asking for leniency for the

19  reckless choices I made.  I'm not a bad person, your Honor,

20  I've just made some bad choices in my short life.  Regardless

21  of your sentence today, I will continue making choices that

22  will enable me to change the course of my life.  Thank you for

23  the chance to speak.

24          THE COURT:  Thank you, Mr. Adcock.  I appreciate it.

25  It's always helpful for me to be able to hear from you and get

1   as much information about you, get to learn as much as I can

2   about you before I impose the sentence and I do want to take

3   just a very short recess and I promise it won't be terribly

4   long.  I need just a few minutes.  I'm going to take a five to

5   10 minute recess.  I'll ask that you all remain in the

6   courtroom.

7            (Recess taken at 3:52 p.m.)

8            (Reconvened at 4:00 p.m.)

9            THE CLERK OF THE COURT:  All rise.  Court has

10  reconvened in the case of United States versus Andrew Adcock

11  case number 18-20594.  Counsel, please put your appearances on

12  the record again.

13           MR. LONGSWORTH:  Blaine Longsworth appearing on

14  behalf of the United States.

15           MR. SABBOTA:  If it please the court, Jerome Sabbota

16  with Mr. Adcock.

17           THE COURT:  All right, thank you.  You may be seated

18  and thank you all for your patience and your remarks and again

19  especially to you, Mr. Adcock.  They were very meaningful and

20  impactful and so I wanted to take some time to consider

21  everything that I have already read and everything that I have

22  heard today and unfortunately, Mr. Adcock, we don't get to

23  control our childhood and when your formative years are marked

24  by abuse, neglect, lack of adult supervision, guidance,

25  affection and stability, it's not uncommon that later in life

1   you get involved with the wrong people, make bad decisions and

2   do destructive things and that's what happened in your young

3   life and when I look at your history and characteristics and

4   the nature and circumstances of this offense which are some of

5   the sentencing factors that I have to consider in determining a

6   sentence that is sufficient, but not greater than necessary to

7   achieve the purposes of our sentencing laws, I'm not surprised

8   that they go hand in hand here.

9           Your parents as we know both suffered from drug

10  addiction and neither one of them was able to take care of you

11  and your brother.  You spent some difficult time with both

12  including some time in an abusive environment, some time in

13  foster care.  When you were just 10, you were abandoned and

14  lived in a homeless shelter for a few weeks and tried again

15  with your dad, but Protective Services had to again intervene.

16  At age 11 you came to Flint to live with your grandmother, but

17  she was not able to control you.  By age 12, you were a daily

18  marijuana user and by age 15, a daily user of methamphetamine.

19          You also suffered from probably untreated ADD,

20  bi-polar disorder and dyslexia.  Now Dr. Segrue has diagnosed

21  anti-social behavioral disorder so you did not do well in

22  school and you didn't go to school very often.  You got

23  involved with a dangerous street gang so by age 15 you were

24  already in trouble with the law and that has remained a

25  constant in your life.

1          By age 17 you had your first serious weapons offense,

2     a stolen 12 gauged shotgun and methamphetamine-making supplies,

3     was in a hotel room where you were found passed out.  Before

4     you went to jail on that offense, you were caught selling

5     methamphetamine at a gas station.

6          You didn't do well in jail.  You had seven

7     misconducts.  You were paroled in February 2015 and arrested in

8     new charges in September of 2015 for fleeing and eluding police

9     which also involved throwing hydrocodone pills out the window

10    and we also now know that during the same time you were

11    committing the instant offense of trafficking in guns and

12    drugs.

13         While you were on release for the fleeing alluding

14    you cut the tether off and absconded until you were arrested on

15    new gun and drug charges on December 5th, 2015 for being in a

16    home with a loaded 357 magnum revolver and methamphetamine

17    components.  You pled to the gun charge which we've talked

18    about today has a mandatory five-year imprisonment term so

19    there was a lot of criminal activity during that short time

20    span and as a result, you're presently serving time in state

21    court with a release date of anywhere from July 10, 2021 to

22    February 8, 2038 because of as Mr. Sabbota indicated the

23    unknown parole violation and again this time in jail has been

24    problematic with 17 misconducts including possession of

25    contraband and assaulting another inmate and now we have this

1    federal offense which is perhaps the most serious of all.   In

2    fact, that it doesn't get much more serious and dangerous than

3    a felon trafficking in firearms and controlled substances at

4    the same time and doing it multiple times, but that seems to be

5    how you supported yourself because there's no other real work

6    history and as you told Dr. Segrue when you got out of jail,

7    you had no real job skills, but had to support yourself and

8    your family and you could make money selling guns and so all of

9    that is difficult given the other sentencing factors that I

10   have to consider.   It has to be a sentence that somehow gets

11   you to start respecting the law.   It needs to be a sentence

12   that given your history of repeat criminal conduct, somehow

13   deters you and others like you from continuing to engage in

14   this conduct.   It needs to be a sentence that protects the

15   public from your dangerous conduct.   It needs to be a sentence

16   that affords adequate punishment and it needs to be a sentence

17   that gives you needed education, training and treatment.

18          So your troubled upbringing led to substance abuse

19   and gang involvement and efforts to survive that as a result at

20   only age 24, nearly age 25, a history of committing crimes,

21   violating Court's supervision and misbehaving in jail and Dr.

22   Segrue explains it more in medical terms as you've set forth at

23   page six of your sentencing memo.   So I, I know how you got

24   here and the picture to date has not been pretty, but I also

25   know there's much more to you and you explained very well in

1   your remarks this afternoon that you know there's much more to

2   you.  You know the man you have been and the man you want to

3   be.

4        I don't think you're a bad person.  I agree that

5   you've made bad decisions and have done bad things and so I

6   don't just consider the past or the bad.  I try to find the

7   good and see if there can be a different future and most

8   important I think you want a different future and it has to

9   start with you.  You also have support.  Your mom has gotten

10  her life on track and the two of you now appear to have a

11  positive relationship and she can be a source of support in the

12  future.  She indicated that she plans to move to Tennessee and

13  have you move there with her so you can get out of a bad

14  environment that has surrounded you.  Your dad's letter

15  indicates that he's overcome his addiction and he wants to help

16  if you all are able to form a relationship, but they are also

17  examples that you can overcome a life of addiction.

18       You're in good physical health.  You have taken

19  responsibility here.  As the government notes, you were only 20

20  when you committed these offenses so there's certainly room for

21  maturity and decision-making.  We can get you treatment and

22  counseling for your substance abuse issues which have

23  contributed to many of the problems in your life.  You have

24  some goals.  You enjoy art and drafting and would like to

25  pursue drafting design, something else that you should be able

1    to work toward while you finish your time in prison.  You

2    earned your G.E.D.  You've completed some helpful courses and

3    programs while in prison.

4            You've been with the same woman for many years and

5    are now engaged to her.  She's had her own substance abuse

6    struggles, but remains supportive of you.  You're also a father

7    and report having a relationship with your daughter and wanting

8    to be there for your son.  So far, being away from them has not

9    impacted your behavior yet either inside or outside of prison,

10   but I do think as you've started to mature that you do

11   appreciate and recognize if you want to have a life with your

12   children, your conduct has to change and Dr. Segrue has opined

13   that your prognosis for rehabilitation is guarded, that you may

14   have the potential to turn your life around, but you've not yet

15   demonstrated an interest or determination to live a prosocial

16   life, but with appropriate mental health treatment and academic

17   and vocational training, coupled with careful supervision, that

18   he believes your risk of recidivism can be managed effectively.

19           You are facing significant time still on the state

20   offenses and significant time here which will keep the public

21   safe while you continue to work on turning your life around.

22   Those are other factors that I have to consider.  I recognize

23   that there is a chance this could have been an offense that may

24   not have occurred had you been charged with this conduct in

25   2015 and not in 2018 and that relates to the intervening

1   offense for which you're now serving the state time and I do

2   consider that as well.  I appreciate the government bringing up

3   the recent case I had with another defendant who was in a

4   similar situation and I did provide a variance there and so I

5   do consider as well the need to avoid unwarranted sentencing

6   disparities and so considering all of what we call the 3553(a)

7   factors, the sentencing factors that I have to consider, I will

8   grant a downward variance on count six.  I will then accept the

9   Rule 11 Plea Agreement with the understanding that the sentence

10  here will not exceed 152 months and so considering all of those

11  factors, Mr. Adcock, the Court is going to sentence you as

12  follows.

13          Pursuant to the sentencing reform act of 1984, the

14  Court, considering the sentencing guidelines and factors

15  contained in 18 United States Code, section 3553(a), hereby

16  commits you to the custody of the United States Bureau of

17  Prisons for a term of 60 months on count six and 60 months on

18  count 12 to be served consecutive to one another.  Count 12

19  shall also be consecutive to your undischarged term of

20  imprisonment with the Michigan Department of Corrections and

21  count six will be concurrent to your undischarged term of

22  imprisonment with the Michigan Department of Corrections.

23          I will recommend that you be designated to a facility

24  with a comprehensive drug treatment program.  Once you're

25  released from jail, I'm going put you on supervised release for

a term of two years on each count to be served concurrent to
each other.  You will have to pay a special assessment of 100
dollars per count so 200 dollars which will be due immediately.
I am going to waive the imposition of a fine, the cost of
incarceration and the cost of supervision due to your lack of
financial resources.  I will order mandatory drug testing.

Pursuant to the law 34 United States Code, Section
40702, I will also order that you cooperate with the collection
of a DNA sample as directed by the probation officer and during
the period of time that you're on supervised release, the two
years, you will have to abide by the standard conditions that
have been adopted by this Court and I'm going to impose the
following special conditions swelling.  Due to the nature of
the offense and the need to protect the public, I will have you
submit your person, residence, office, vehicle, papers,
business or any place of employment and any property under your
control to a search.  That search will be conducted by a United
States probation officer at a reasonable time and in a
reasonable manner based on reasonable suspicion of contraband
or evidence of a violation of a condition of release.  Failure
to submit to such a search may be grounds for revocation and
you'll have to warn any residents that the premises may be
subject to search and due to your reported history of mental
health problems, I will order that you participate in a mental
health treatment program and follow the rules and regulations

1  of that program.  The probation officer in consultation with

2  the treatment provider will supervise your participation in

3  that program.

4          You'll have to submit to a psychological psychiatric

5  evaluation as directed by the probation officer if necessary

6  and due to your past drug use, I will order that you

7  participate in a substance abuse treatment program and follow

8  the rules and regulations of that program.  Again, the

9  probation officer in consultation with the treatment provider

10  will supervise your participation in that program and you'll

11  have to submit to substance abuse testing to determine if you

12  have used a prohibited substance.  Also pursuant to the terms

13  of the parties' Rule 11 Plea Agreement I will dismiss counts

14  seven, eight, nine, 10 and 11 and so let me ask the lawyers

15  with that sentence, are there any objections that have not

16  previously been raised?  Mr. Longsworth?

17          MR. LONGSWORTH:  No objections, your Honor.

18          THE COURT:  And Mr. Sabbota?

19          MR. SABBOTA:  No, your Honor.

20          THE COURT:  All right.  I will also advise Mr. Adcock

21  that because the sentence that I just imposed does not exceed

22  the top of the guideline range called for in the parties' Rule

23  11 Plea Agreement, I don't believe that under the terms of your

24  Rule 11 Plea Agreement that you have a right to appeal the

25  sentence, but that is an issue you should discuss with your

1    lawyer and to the extent that you do believe there is any right

2    of appeal, you would have to file any notice of appeal within

3    14 days of the date that I issue final judgment in this matter

4    or 14 days of any notice of appeal that's filed by the

5    government and if you're unable to pay for the cost, you may

6    apply for leave to appeal without prepayment of the cost and

7    you may also seek assistance from the clerk if need be.

8         All right.  Then with that, counsel, is there

9    anything further we need to do on this matter today?

10   Mr. Longsworth?

11        MR. LONGSWORTH:  Nothing further, your Honor.

12        THE COURT:  And Mr. Sabbota?

13        MR. SABBOTA:  Nothing further other than I believe

14   Mr. Adcock wants to go back into the state prison system so we

15   have to discharge the writ.

16        THE COURT:  All right.  Mr. Longsworth?

17        MR. LONGSWORTH:  I release the writ, your Honor.

18        THE COURT:  Okay, we'll do that and I should have

19   asked Mr. Sabbota do you have any recommendation or want to

20   make a request for a placement recommendation?  I did recommend

21   and do want him to go to a place with a drug treatment program.

22        MR. SABBOTA:  Well, I would ask for Milan, but I

23   don't know that he'll be classified for Milan based on his

24   history, but that would make it easier for the family because

25   it's the institution in the state.

1          THE COURT:  Right and I wasn't sure if the mother was

2    going to be moving to Tennessee, if there was any facility --

3          MR. SABBOTA:  Well, right now his fiance's here which

4    is the most important woman in his life.

5          THE COURT:  All right.  I'll make the recommendation

6    to Milan and let me ask probation, anything further from

7    probation?

8          PROBATION REPRESENTATIVE:  Nothing further, your

9    Honor.

10          THE COURT:  Mr. Adcock, you expressed that this is

11   unfortunately the third time that your mother has watched you

12   be sentenced and that you don't want there to be another.  None

13   of us do either and so we wish you well.  Take care of yourself

14   and good luck to you and the family.

15          THE DEFENDANT:  Thank you.

16          THE COURT:  All right.

17          MR. SABBOTA:  Thank you.

18          (Sentencing concluded at 4:18 p.m.)

19                    --    ---    --

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5

6

7           I, David B. Yarbrough, Official Court

8   Reporter, do hereby certify that the foregoing pages

9   comprise a true and accurate transcript of the

10  proceedings taken by me in this matter on Monday,

11  October 7th, 2019.

12

13

14

15

16  10/7/2019                  /s/ David B. Yarbrough

17  Date                       David B. Yarbrough,
                               (CSR, RPR, FCRR, RMR)
18                             231 W. Lafayette Blvd.
                               Detroit, MI  48226
19

20

21

22

23

24

25